**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10325 |
| Plaintiff-Appellant, | D.C. No. 1:15-cr-00293-SOM-KSC-2 |
| v. | |
| MICHAEL WALKER, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Argued and Submitted August 14, 2018
San Francisco, California

Before: SCHROEDER, SILER,[**] and MURGUIA, Circuit Judges.

The United States appeals the District Court's pretrial order suppressing

statements made by the defendant, Michael Walker, to military investigators in the

Criminal Investigations Division following the murder of his wife. The District

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Court, after an evidentiary hearing, held that the defendant was detained and hence subject to custodial interrogation once the questioning turned to the subject of extramarital relationships. The District Court suppressed all statements made after that time.

The government first contends that Walker was not in custody until he received warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), some time after the initial questioning about extramarital affairs. The warnings were apparently administered after the government reviewed the contents of his cell phone, revealing a specific extramarital relationship. Before that time, the investigators had not referred to any possible evidence of Walker's motive or guilt of the murder of his wife. Prior to the warnings, Walker had been provided a lunch break and access to the restroom. Moreover, the earlier questioning concerning extramarital relationships did not pertain to any serious criminal offense or focus on any particular relationship, and the language used by the investigator was not threatening or coercive. The facts here do not indicate Walker was in custody and, therefore, no Miranda warnings were required. *See United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002). In addition, there is no indication that Walker's statements were a product of police coercion and made involuntarily. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The District Court erred in

suppressing the statements made during that earlier questioning. Accordingly, Walker's statements prior to the warnings are admissible for all purposes. *See Michigan v. Harvey*, 494 U.S. 344, 350-51 (1990).

The thrust and tone of the interview materially changed, however, when the cell phone information reflected the existence of a specific relationship that prompted investigators to suspect Walker's guilt and the need for the *Miranda* warnings. Once the warnings were given, and Walker responded affirmatively that he wished to have counsel and wanted to stop talking with the investigator, the interrogation nevertheless continued, over Walker's protests, on the subject of his relationship with "Lisa." The District Court did not err in ruling that Walker was in custody during this questioning. The government bears the burden of establishing that the statements made post-*Miranda* warnings were voluntary, despite the violation of *Miranda* rights. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). The court must consider a number of factors relating to the defendant's situation and the officer's conduct to determine voluntariness. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). In this case, Walker had not eaten since the previous evening, had already endured questioning for more than an hour and a half, and responded with mumbles and complaints, while the interrogator in forceful and threatening tones urged him to answer by *inter alia*,

3

invoking the will of God.  The District Court did not err in holding that the statements made under such interrogation were involuntary and inadmissible for any purpose.  *See id.*; *Pollard v. Galaza*, 290 F.3d 1030, 1033–34 (9th Cir. 2002).

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**



*US v. Walker* , Case No. 17-10325

**SILER, Judge, concurring in part and dissenting in part.**

I concur with the decision by the majority that the district court erred in suppressing the statements made by Walker during the questioning before he received warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). However, I beg to differ from the majority memorandum that the district court did not err in ruling that Walker was in custody during this questioning.

Certainly, the government bears the burden of establishing that the statements made after the *Miranda* warnings were voluntary. See *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). The prosecution admits that those statements post-*Miranda* cannot be used as evidence in chief during the trial, but the prosecution suggests that they were voluntary statements which could be used in the cross-examination of Walker, if he chooses to testify at trial. Although at the time of questioning, Walker had not eaten since the previous evening, he had been on duty at the hospital and willingly came with the officers to the building where he was questioned. Moreover, although he was questioned for more than an hour and a half, he also was given a lunch break and released after the questioning. He was never searched or patted down, and, he was taken to quarters after the interrogation. He voluntarily went with the officers to the office to give a statement, for he was the person who notified authorities that his wife had been

1

killed. It was logical that the investigating officers would question Walker in a location away from his dwelling where the crime occurred and where evidence might be found before it was disturbed.

Walker was never told he was under arrest, nor was he told he could not leave. Although the questioning by Mitchell was overbearing, that did not make the statements involuntary. As the majority states, the government bears the burden of establishing that the statements were voluntary. However, we consider voluntariness under a de novo review. *United States v. Preston*, 751 F.3d 1008, 1020 (9th Cir. 2014)(en banc). In this case, Walker was 35 years old, an Army sergeant, and a medic. He had a high school education and some college, including several criminal justice courses. I would find that the district court erred when it concluded that the statement made after the *Miranda* warnings were involuntary. I would therefore allow the post-*Miranda* statements to be used for impeachment purposes only. See *Oregon v. Elstad*, 470 U.S. 298, 307 (1985).